# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

HDRE BUSINESS PARTNERS LIMITED          CIVIL ACTION NO. 09-977
GROUP, L.L.C.

VERSUS                                  JUDGE ELIZABETH ERNY FOOTE

RARE HOSPITALITY INTERNATIONAL,         MAGISTRATE JUDGE HORNSBY
INC., A GEORGIA CORPORATION,
D/B/A LONGHORN STEAKHOUSE

## <u>MEMORANDUM RULING</u>

This is a suit for damages by the Plaintiff, HDRE Business Partners Limited

Group, L.L.C., against the Defendant, RARE Hospitality International, Inc.

("RARE"), arising out of the alleged breach of a commercial real estate lease.  The

Plaintiff seeks to enforce the lease while the Defendant argues that the lease

agreement was superseded by a later agreement.  Before this Court are four motions

filed on behalf of the Defendant:  a Motion for Judgment on the Pleadings [Record

Document 27], a First Motion for Summary Judgment [Record Document 67], a

Second Motion for Summary Judgment [Record Document 68], and a Third Motion

for Summary Judgment [Record Document 69].  In addition, the Plaintiff has filed

a Motion for Partial Summary Judgment [Record Document 72]. Based on the

language of the contracts and for the reasons stated herein, RARE's first and second

motions for summary judgment [Record Documents 67 and 68] shall be **GRANTED**,

while its motion for judgment on the pleadings [Record Document 27] and its third

motion for summary judgment [Record Document 69] shall be **DENIED AS MOOT**.

HDRE Business Partners Limited Group L.L.C.'s motion for partial summary

judgment [Record Document 72] shall be **DENIED**.  In accordance with this ruling,

HDRE Business Partners Limited Group L.L.C.'s claims shall be **DISMISSED WITH**

**PREJUDICE**.

## THE CONTRACTS IN QUESTION

There are three contracts which give rise to this litigation and which involve

the same piece of commercial real estate:

1. "Out Parcel Purchase and Sale Agreement" [Record Document 71, Exhibit 1] between Stirling Bossier L.L.C. ("Stirling") and HDRE Business Partners Limited, executed on various dates in August, 2007. RARE is not a party to this contract.  This agreement is what is typically known as a "buy-sell" or purchase agreement.[1]   This contract was

---

[1]At the outset, the Court notes that there are, in fact, two HDRE business entities. The Plaintiff in this matter is HDRE Business Partners Limited Group, L.L.C., hereinafter referred to as HDRE L.L.C.  The second HDRE entity is HDRE Business Partners Limited, hereinafter referred to as HDRE Ltd.  Although the entities are legally distinct, the managing partner of HDRE Ltd. and the managing member of HDRE L.L.C. are the same person -- Wesley Dingler.  The first contract, the "Out Parcel Purchase and Sale Agreement," is signed by HDRE Ltd.  Additionally, that is the entity named in the contract's first paragraph.  However, the Court notes that paragraph 12.1 of the contract, "NOTICES," lists the purchaser as "HDRE Business Partners Limited Group, L.L.C."  The HDRE entity involved in the other two contracts at issue in this litigation is the Plaintiff, HDRE L.L.C.  No party raised with the Court the issue of the two different HDRE entities.  The Court, in Record Document 92, requested that the parties file briefs answering the question as to whether or not these were two separate legal entities and, if so, what effect that fact had on the litigation.  Both parties, in Record Documents 93 and 94, respectively, responded that indeed there were two

modified by three extensions.  [Record Documents 71, Exhibit 2; 71, Exhibit 5; and 71, Exhibit 8].

2.    "Ground Lease" [Record Document 70, Exhibit 1] entered into between HDRE L.L.C. and RARE, dated February 29, 2008. This contract was modified by two extensions of the "feasibility period."  [Record Document 71, Exhibit 3; 71, Exhibit 4]; and,

3.    "Amendment and Assignment of Contract" [Record Document 71, Exhibit 9] among HDRE L.L.C., RARE, and Stirling, dated May 16, 2008.  This contract was modified by one extension to obtain RARE's corporate approval.  [Record Document 71, Exhibit 10].

## FACTUAL BACKGROUND

A more detailed analysis of these contracts provides the basis of the Court's ruling.  In August of 2007, HDRE Ltd. entered into a purchase agreement with Stirling for a parcel of land that was part of a retail shopping development in Bossier City, Louisiana (the "Stirling Property").  [Record Document 71, Exhibit 1].  This is the first contract listed above.  Pursuant to the purchase agreement, HDRE Ltd. made a non-refundable deposit in the amount of $15,000.00.  After three extensions of the purchase agreement, the amount on deposit totaled $100,000.00.  [Record Document 71, Exhibit 1; 71, Exhibit 2; and 71, Exhibit 9].  All parties admit that at the

---

different HDRE entities.  However, both parties argue that this fact has no effect on the litigation.  Both parties assert that the fact that HDRE Ltd. and not HDRE  L.L.C. was the party to the "Out Parcel Purchase and Sale Agreement" was a mistake. The parties' position is bolstered by the fact that each of the three extensions of the purchase agreement were in the name of HDRE, L.L.C. and executed by Dingler on behalf of HDRE, L.L.C  As explained in more detail below, this Court cannot ignore the apparent confusion of these two different entities.  This confusion does not affect the Court's ultimate result in this case.

time the purchase agreement was executed, HDRE L.L.C., through Wesley Dingler, was in negotiations with RARE, which was interested in leasing the property to open a Longhorn Steakhouse restaurant.   [W. Dingler Depo. pp. 30-35]. Furthermore, the contracts themselves reveal these ongoing negotiations. For example, as is discussed in more detail below, the dates on the three extensions on the purchase agreement relate to deadlines in the other two contracts.

In February of 2008, HDRE L.L.C., the Plaintiff in this litigation, and RARE entered into a fifteen year lease of the Stirling Property.  [Record Document 70, Exhibit 1].  This "Ground Lease" is the second contract listed above.  Significantly, in the lease, HDRE L.L.C. warranted to RARE that at the time the lease was executed, it would have full title to the Stirling Property.  The initiation of the term of the lease was subject to many conditions, including  a "feasibility period" of 60 days from the date the lease was signed.  The date for the expiration of the feasibility period first was extended to May 2, 2008 [Record Document 71, Exhibit 3] and then again to May 9, 2008 [Record Document 71, Exhibit 4].  "Feasibility" is defined in paragraph 3.4 of the lease to include such things as the tenant obtaining reassurances for zoning, a clean title, and other typical lease clauses, but also contained a provision that the tenant's obligations under the lease were "subject to and conditioned upon":

"(g).   Tenant obtaining its internal corporate approval of this Lease."

[Record Document 70, Exhibit 1, ¶ 3.4(g)].

This clause essentially gave RARE the right to walk away from the lease during the feasibility period.  The lease also provided for a "permitting period" which commenced upon the termination of the feasibility period and continued for 75 days thereafter.  [Record Document  70, Exhibit 1, ¶ 1.15].  Although the lease document allowed termination of the agreement during the "permitting period," that termination would require RARE to show that it was unable to obtain the necessary permits.  In other words, this provision required a good faith effort.  The provision governing the "feasibility period," on the other hand, allowed RARE to terminate the agreement for failure to obtain corporate approval without a showing of good faith.

The language of the two contracts -- the "Out Parcel Purchase and Sale Agreement" between Stirling and HDRE Ltd.  [Record Document 71, Exhibit 1] and the "Ground Lease" between HDRE L.L.C. and RARE [Record Document 70, Exhibit 1]-- clearly indicates that this is a two-stage transaction.  That is, HDRE Ltd. was entering into the buy-sell agreement with Stirling in anticipation of leasing the property to RARE.  Further evidence of this fact is the overlapping time frame of the two contracts.  For example, the feasibility period of the "Ground Lease" was

extended to May 9, 2008 [Record Document 71, Exhibit 4], while the second extension of the "Out Parcel Purchase and Sale Agreement" was likewise extended until the same date, May 9, 2008 [Record Document 71, Exhibit 5]. The third extension of the "Out Parcel Purchase and Sale Agreement" [Record Document 71, Exhibit 8] anticipates in explicit language the "Amendment and Assignment of Contract" (discussed more fully below) and specifically references the assignment deadline, that is, the deadline whereby HDRE L.L.C. would assign its right to purchase the property to RARE.

It is undisputed between the parties that in May of 2008, RARE informed HDRE L.L.C., through Wesley Dingler, that it no longer wanted to lease the Stirling Property, but rather desired to purchase it. RARE requested that HDRE assign to it the "Out Parcel Purchase and Sale Agreement," transferring to RARE the right to purchase the property directly from Stirling. It is also undisputed that at the time RARE informed HDRE that it wished to re-work the agreement, RARE was still in the lease feasibility period, during which time it could have terminated the lease altogether.

On May 16, 2008, HDRE L.L.C., RARE, and Stirling entered into an "Amendment and Assignment of Contract," allowing RARE to purchase the Stirling Property directly from Stirling. [Record Document 71, Exhibit 9]. This is the third

contract listed above.   In doing so, HDRE L.L.C. assigned all its rights and obligations in and under the purchase agreement to RARE.  Id.  However, like the "Ground Lease," the "Amendment and Assignment of Contract" also was conditioned upon RARE obtaining corporate approval.  The specified time period for obtaining the corporate approval was May 23, 2008.  [Record Document 71, Exhibit 9, ¶ 13].  This period was later extended until May 30, 2008.  [Record Document 71, Exhibit 10].

In briefs, the parties refer to deposition testimony revealing that during negotiations, the parties discussed RARE compensating HDRE for the assignment of rights at the time of assignment.  [W. Dingler Depo. pp. 153-54; Cowan Depo pp. 111-14].  However, after negotiations, the agreement they reached was that RARE would only pay HDRE when the actual transaction-- the purchase of the property-- was completed.  Id.  In short, the parties represent in their briefs that during the negotiation phase, the parties contemplated HDRE being compensated for its involvement in the transaction, although HDRE ultimately agreed to forego payment until the sale was completed.

The Court finds it unnecessary to look at the deposition testimony of the parties in this matter.  The language of the "Amendment and Assignment of Contract" specifically provides that HDRE L.L.C. will be compensated for its

assignment to RARE upon the "closing of the transaction contemplated by the Contract."  Under the clear language of the contract, the "transaction contemplated by the contract" was the sale of the property from Stirling to RARE.  If the sale to RARE closed, HDRE L.L.C. was to receive $150,000.00 plus reimbursement for deposits applicable to the purchase price in the amount of $50,000.00 and attorneys' fees in the amount of $10,000.00.  [Record Document 71, Exhibit 9, ¶ 1].  The "Amendment and Assignment of Contract" also specified what all parties' rights would be if, in fact, RARE <u>did</u> terminate the contract within the time period to obtain corporate approval.  Thus, the contract provided rights among all of the parties as to two contingencies:  what happened if the sale of the property was consummated (HDRE L.L.C. received $210,000.00) and what happened if RARE's corporate office did not approve the sale (the contract would terminate and HDRE would receive nothing).[2]

As noted above, a provision in both the "Ground Lease" and the "Amendment and Assignment of Contract" allowed RARE to terminate the agreements if it did not obtain corporate approval for the respective transactions. [Record Document 70, Exhibit 1; Record Document 71, Exhibit 9].  On May 28, 2008, RARE notified Stirling and HDRE L.L.C. that it would not obtain corporate approval

_____

[2]The contract was also conditioned upon RARE obtaining an alcohol permit. [Record Document 71, Exhibit 9, ¶ 12.]  This paragraph is not at issue.

for the purchase of the property and terminated the "Amendment and Assignment of Contract" altogether.[3]  [Record Document 71, Exhibit 11].  Following RARE's termination of the agreement, HDRE asked RARE to comply with its commitments under the "Ground Lease."  [Record Document 71, Exhibit 12].  RARE responded that it had no lease obligations because the lease agreement was  terminated by the assignment of the purchase agreement.  RARE's position was that the "Amendment and Assignment of Contract" on May 16, 2008 novated, or otherwise extinguished, the "Ground Lease."

The parties disputed this contention for a period of time before HDRE L.L.C. eventually commenced this action against RARE for breach of contract.  In addition to the breach of contract claim, HDRE L.L.C. contends that RARE's expression of intent to purchase the property was simply a "ruse" to get out of the lease agreement, as RARE management allegedly already had decided to cancel the plans for the Longhorn Steakhouse restaurant.  Indeed, according to HDRE L.L.C.,when RARE suddenly changed its mind about leasing the Stirling Property, RARE's parent company, Darden Restaurants, was already in the process of purchasing

---

[3]Seemingly, all parties agree that RARE's termination of the "Amendment and Assignment of Contract" was permissible; thus, that is not at issue in this suit.

another piece of property in the same shopping center in order to develop an Olive Garden.[4]

## THE PENDING MOTIONS

I.   RARE's Judgment on the Pleadings and First Motion for Summary Judgment.

RARE initially moved for judgment on the pleadings.  [Record Document 27]. The arguments supporting that motion were later realleged and incorporated into RARE's first motion for summary judgment.  [Record Document 67].  In essence, RARE contends that judgment on the pleadings and/or summary judgment should be granted in its favor because the lease underlying HDRE L.L.C.'s claim could not have been breached at all, as the "Ground Lease" ceased to have any legal effect on the parties with the execution of the "Amendment and Assignment of Contract." RARE's position is that the lease initially existing between the parties, along with its concomitant obligations, was extinguished under a variety of different theories, including novation, confusion, failure of consideration, impossibility of performance, and/or because the lease had no prospective purpose.

In opposition, HDRE L.L.C. contends that RARE's motion for summary judgment must fail because (1) RARE cannot prove that HDRE intended novation and (2) the "Amendment and Assignment of Contract" was not a binding agreement

---

[4] The Olive Garden property purchase was being executed through GMRI, Inc., a Darden Restaurants subsidiary.

because it contained a suspensive condition.  HDRE argues that because RARE's obligations were conditioned on whether it could obtain approval to purchase the property, this was not a binding agreement, and therefore could not substitute or novate the lease agreement.

II.    RARE's Second Motion for Summary Judgment.

RARE's second motion for summary judgment focuses on HDRE L.L.C.'s allegations of fraud, specifically the contention that RARE fraudulently induced HDRE L.L.C. into assigning the purchase agreement when RARE knew it did not intend to follow through with either the lease or the purchase of the Stirling Property.  In opposing the motion, HDRE L.L.C. seemingly concedes that it has not yet produced a witness or document which would provide direct evidence of RARE's fraud.  [Record Document 78, p. 2].  Nonetheless, HDRE L.L.C. asserts that based upon the facts of this case, "it would not be difficult for one to conclude that RARE wanted out of the lease with HDRE and used a trick (fraud) to extricate itself from its obligations . . . ."  Id.

III.    RARE's Third Motion for Summary Judgment.

In its third motion for summary judgment, RARE argues that it was excused from performing under the lease because HDRE L.L.C. had already defaulted by not providing a surety bond.  In response, HDRE L.L.C. contends that the surety

provision was moot once the amendment and assignment took effect.  Thus, HDRE L.L.C. claims it was not required to provide a surety bond and, consequently, did not default on the lease.

IV.   <u>HDRE L.L.C.'s Motion for Partial Summary Judgment.</u>

HDRE L.L.C. filed a motion for partial summary judgment, urging this Court to find that the lease is binding as a matter of law because it was not novated. [Record Document 72].  Specifically, HDRE L.L.C. contends that it lacked the requisite intent to novate the lease agreement. In addition, HDRE L.L.C. asserts that the lease was not extinguished by the doctrine of confusion, as RARE was never both the owner and the tenant of the Stirling Property.  Rather, RARE was only a potential owner and a potential tenant and neither of those positions implicates the doctrine of confusion.  Finally, HDRE L.L.C. argues that the lease is enforceable because RARE failed to terminate it during the feasibility period, which ended the period of time during which RARE could have unilaterally terminated the lease. Also, although RARE was still technically in the permit period and could have withdrawn if permits could not be obtained, HDRE L.L.C. argues that RARE could have obtained all of the necessary permits had it not voluntarily withdrawn its permit applications.

## LAW AND ANALYSIS

I.   <u>Motion for Judgment on the Pleadings.</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ––– U.S. ––––, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). "In deciding whether the complaint states a valid claim for relief, [the court must] accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." <u>In re Great Lakes Dredge & Dock Co. LLC</u>, 624 F.3d 201, 210 (5th Cir. 2010).  The Court may consider the pleadings and any documents attached thereto.  <u>See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 313 (5th Cir. 2002).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S.Ct. at 1949 (internal citation omitted).  Thus, the Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005).  A motion for judgment on the pleadings is determined "using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." <u>Gentilello v. Rege</u>, 627 F.3d 540, 544 (5th Cir. 2010).  In this case,

because the Court has considered the written contracts themselves in deciding the motions before it, the issues will be resolved on a summary judgment standard.

II.    Motion for Summary Judgment.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the

nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, <u>Little</u>, 37 F.3d at 1075,  <u>Wallace</u>, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  <u>Cooper Tire & Rubber Co. v. Farese</u>, 423 F.3d 446, 456 (5th Cir. 2005).

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried.  Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried."  All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  Local Rule 56.2.

III.    <u>Novation.</u>

RARE primarily relies on the concept of novation to establish that it has not breached the lease with HDRE, L.L.C.  "Novation is the extinguishment of an existing obligation by the substitution of a new one."  La. Civ. Code art. 1879.  "The Civil Code mandates a careful review of the facts surrounding a transaction before concluding that novation has occurred. . . ."  <u>In re Tuscany Reserve, L.L.C.</u>, 2011 WL 831596, *2 (Bkrtcy.M.D.La. Mar. 3, 2011).  The intent to novate, or to extinguish the

original obligation, "must be clear and unequivocal.  Novation may be not presumed."  La. Civ. Code art. 1880.

> Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation.  If any substantial part of the original performance is still owed, there is no novation.  Novation takes place also when the parties expressly declare their intention to novate an obligation.   Mere modification of an obligation, made without intention to extinguish it, does not effect a novation.   The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.

La. Civ. Code art. 1881.  In order to find novation, Louisiana courts require that the parties either "entered into an agreement to novate or expressly declared their intention to novate."  Lowry v. Mills, 682 So. 2d 802, 805 (La.App. 3 Cir. 10/9/96).

Courts have explained that summary judgment is often inappropriate to resolve the issue of novation, as it "requires the court to weigh conflicting evidence." LaGrange v. Dynamic Indus., 875 So. 2d 1059, 1062 (La.App. 3 Cir. 6/9/04).  Indeed, "the intent of the parties is the most important factor in deciding whether a novation has occurred, and summary judgment is usually not appropriate in cases requiring judicial determination of subjective facts, such as . . . intent."  Id.  However, the parties' intention to novate may be discerned by examining the character of the transaction, the facts and circumstances surrounding it, as well as the terms of the agreement itself.  See Scott v. Bank of Coushatta, 512 So. 2d 356, 360 (La. 1987).  The

burden of proof for establishing novation is on the party who asserts it.  See Albarado v. State Farm Mut. Auto Ins., 926 So. 2d 94, 96 (La.App. 3 Cir. 4/5/06); Langhoff Prop., L.L.C. v. BP Prod. N. Am., Inc., 519 F.3d 256, 262 (5th Cir. 2008).

While novation is a subject not necessarily best suited for resolution on summary judgment, the interpretation of a contract is a matter of law.  See La. Civ. Code art. 2045.  Indeed, so long as the "words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  This principle of contract interpretation is sometimes referred to as the "four corners rule."  That is, the meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument and extrinsic or parole evidence is not admissible either to explain or to contradict the terms of the instrument.  See Brown v. Drillers, Inc., 630 So. 2d 741 (La. 1994).  In those types of cases, summary judgment is appropriately used to resolve the parties' dispute. This Court finds that the intent of the parties is clear from the instruments themselves and therefore summary judgment is an appropriate vehicle to resolve this dispute.

In the instant case, as previously discussed, the first agreement between the parties was the "Out Parcel Purchase and Sale Agreement" between Stirling and HDRE Ltd., while the second agreement was the "Ground Lease" between HDRE

L.L.C. and RARE.   Neither the Plaintiff nor the Defendant disputes the validity of either of those agreements standing alone.  Rather, the dispute arises in ascertaining what impact the third agreement-- the "Amendment and Assignment of Contract"-- had upon the lease.

Though the parties are not troubled that HDRE L.L.C. was not the prospective purchaser of the Stirling Property and thus had no rights in the property to lease to RARE in the first place, the Court is concerned.  Although Wesley Dingler was at the helm of both HDRE entities, the two are legally distinct and must be treated as such.  The true holder of the rights to the purchase agreement was HDRE Ltd., which never transferred those rights to HDRE L.L.C. either prior to the execution of the lease or at any time up to the present.  Thus, it is apparent that at the outset, HDRE L.L.C. was agreeing to lease property to which it had no rights whatsoever.  Because HDRE L.L.C. had no legal title in the immovable property and therefore no right to lease the property to RARE, the Court finds that RARE could not have breached the "Ground Lease" with HDRE L.L.C.

In the alternative, however, accepting the parties' position that it was a mistake that HDRE Ltd. and not HDRE L.L.C. was the party to the purchase agreement and therefore the Court should ignore this discrepancy, the Court holds that the "Amendment and Assignment of Contract" did, in fact, novate the "Ground

Lease," such that RARE prevails as a matter of law on the breach of contract claim.

With respect to novation, HDRE L.L.C.'s principal argument is that novation did not

occur because HDRE L.L.C. had no intent to novate the lease agreement.   In

presenting this argument, HDRE L.L.C. relies almost exclusively on the intent

language contained within Louisiana Civil Code Article 1880; yet, HDRE L.L.C.

ignores the fact that intent can be determined by a careful examination of the

writings between the parties. The language of the three contracts taken as a whole

reveals that it was the intent of all parties to declare their rights and obligations to

each other under two sets of contingencies:  (1) if the sale of property from Stirling

to RARE was completed and (2) if that sale was not completed.  It is undisputed that

RARE notified HDRE of its intent to be the direct purchaser of the property instead

of the lessor prior to the expiration of the feasibility period of the "Ground Lease."

Furthermore, the contract language demonstrates that the parties were negotiating

with Stirling to transfer HDRE L.L.C.'s rights to purchase the property to RARE. As

noted above, the feasibility period for the "Ground Lease" expired on May 9, 2008.

The "Third Out Parcel Purchase and Sale Agreement Extension," that is, the

extension of Stirling's agreement with HDRE L.L.C., was entered into on May 9,

2008 and specifically states that consideration for the extension was that HDRE had

agreed to assign to RARE the "Out Parcel Purchase and Sale Agreement." [Record

Document 71, Exhibit 8, ¶ 1].  This extension gave the parties until June 6, 2008 to close the sale. Significantly, no party sought further extension of the feasibility period for the "Ground Lease" beyond May 9, 2008. The obvious reason for this is that the "Third Out Parcel Purchase and Sale Agreement Extension" dated May 9, 2008 states explicitly that an assignment of the right to purchase  from HDRE L.L.C. to RARE will take place and therefore there is no longer a need for RARE to lease the property.

The Court acknowledges that the "Amendment and Assignment of Contract" does not state that the "Ground Lease" is terminated.  However, once HDRE L.L.C. gave up its right to buy the property in the "Amendment and Assignment of Contract," it could no longer enter into the "Ground Lease" with RARE under the specific terms of the contract, which terms required HDRE L.L.C. to have good title. Further, as a matter of law, it is inconsistent for the two contracts to exist simultaneously.

HDRE L.L.C. argues that it was never its intent to replace or supersede the lease with the "Amendment and Assignment of Contract."  However, the only proof put forward by HDRE L.L.C. to that effect is its own self-serving statements and the statements of its Texas counsel that they believed at all times that the lease would still be in effect.  Because the Court finds that the intent of the parties was patent

from the face of the contracts, the Court did not consider the testimony of any of the witnesses, nor did the Court weigh the credibility of those witnesses in reaching its decision.

While the "Amendment and Assignment of Contract" agreement may lack an express statement of the intent to novate the "Ground Lease," the reality of the contracts themselves belies HDRE L.L.C.'s position.  First, HDRE L.L.C. was fully aware that RARE had changed its mind about the prospect of leasing.  H.D.R.E.'s own complaint acknowledges this fact: "In early May 2008, RARE informed HDRE that it had changed its plans to lease the Property and, instead, desired to purchase the Property from Stirling."  [Record Document 1, p. 4].  HDRE L.L.C. again concedes this fact in its motion for partial summary judgment: "On or about May 5, 2008, only days before HDRE was to close on the purchase of the Property, RARE notified HDRE that it had decided it would prefer to purchase the Property, rather than lease it."  [Record Document 72, Exhibit 2, p. 6].  Thus, HDRE L.L.C. was on notice that RARE did not intend to follow through on the lease agreement.  This knowledge, coupled with the natural understanding and interpretation of the negotiations and the new contract, is that the "Amendment and Assignment of Contract" extinguished the "Ground Lease."  The explicit language of the respective

agreements reveals the negotiations between the parties, and it is clear the lease served no purpose once the assignment was made.

Further proof of novation is the fact that the "Ground Lease" cannot be interpreted in such a way as to allow it to logically coexist with the "Amendment and Assignment of Contract."  The transaction and the language of the contract evidences the intent to substitute one obligation for another-- to substitute the "Amendment and Assignment of Contract" with RARE as purchaser for the "Ground Lease" with RARE as the lessee.  Once the "Amendment and Assignment of Contract" was executed, no part of the original obligation (the "Ground Lease") was still owed to HDRE L.L.C.  To be sure, HDRE L.L.C. was not buying the Stirling Property and RARE was not leasing the property.  The terms of the transaction, namely the respective positions of the parties, changed such that the two contracts cannot reasonably or sensibly co-exist.  Notably, although the parties changed, the object of the transaction (the acquisition of the Stirling Property) remained the same; the amendment and assignment contained the same conditional provisions that previously existed in the lease; and the obligations on Stirling and the new purchaser were the same.  The major change was that HDRE L.L.C. was no longer going to receive good title to the property and therefore was neither the buyer nor

lessor of the property in question.[5]  Therefore, the Court finds that the parties did not simply modify an agreement.  They executed an entirely new one, which was inconsistent with the positions and respective obligations of the parties in the prior contracts.  Under those circumstances, these two contracts cannot co-exist.

Additional evidence of novation lies in the fact that the amendment and assignment, by its very terms, contemplated putting an end to the rights of all of the parties. It contained provisions which would govern the transaction if the purchase was completed:  HDRE L.L.C. would receive its agreed-upon remuneration of $210,000.00.  It contained provisions which would govern if the purchase was not completed:  Stirling would retain all of the deposits, except for the third extension fee of $25,000.00 which would be returned to RARE.  With full knowledge of these contingency provisions and despite a deliberate effort to design the terms governing

_____

[5]Once the assignment was made, HDRE L.L.C.'s role in the transaction was over, with the exception of it potentially receiving a $210,000.00 payment for its services. HDRE sought monetary compensation because it was relinquishing a valuable interest in terms of future income, but this income was never guaranteed.  Indeed, if it had so desired, RARE could have terminated the lease and walked away from the "Ground Lease" altogether up through May 9, 2008, leaving HDRE L.L.C. with no compensation and no recourse.  It is apparent to this Court that by agreeing to the amendment and assignment, HDRE L.L.C. at least had a chance to recoup its losses, and, in fact, make additional money.  Again, however, this $210,000.00 payment was never guaranteed. When the amendment and assignment proved unsuccessful, HDRE L.L.C. was in no worse position than if RARE had terminated the lease outright; HDRE L.L.C. lost the same amount of money either way.

the termination of the contract, the parties chose <u>not</u> to draft any provision to reinstate the lease in the event the purchase by RARE fell through.  Likewise, the agreement did not reinstate HDRE L.L.C.'s rights to purchase the property from Stirling.

It cannot be overlooked that all parties were represented by legal counsel throughout this transaction and the accompanying negotiations and that those attorneys were responsible for drafting the contracts at issue.  If the parties truly intended for RARE to continue to be bound by the lease, it is inconceivable that they would omit any reference to the lease or a provision to ensure it remained binding. See <u>Placid Oil Co. v. Taylor</u>, 325 So. 2d 313, 317 (La. 1975)(stating that "it is inconceivable, we think, that the parties would omit a reference" to the prior lease if they actually intended for the new lease with higher royalty payments to co-exist with the old lease which allowed lesser royalty payments; some reference would have been made to the past lease if the parties had intended it to remain effective); <u>Biscuit Inv., Inc. v. Cajun Enter., Inc.</u>, 1994 WL 160494, *3 (E.D.La. Apr. 22, 1994) (finding that the assignment agreement could have provided that parties remained obligated under the franchise agreement, but the parties chose not to include such a provision).

In sum, the simple fact that the parties contemplated HDRE L.L.C's exit from the transaction and contemplated how and what HDRE L.L.C. was to be paid is compelling evidence that the parties did not intend for the lease to be binding any longer. They intended for the "Amendment and Assignment of Contract" to replace the "Ground Lease."  HDRE L.L.C.'s exit was contemplated and anticipated, thus the parties could have drafted a provision to ensure that RARE remained bound in the event it terminated the amendment and assignment.  They chose not to do this.

Aside from the issue of intent, HDRE L.L.C. argues that novation cannot occur when a conditional agreement is present.  While ordinarily a conditional agreement cannot be substituted for a binding agreement, in this case, both contracts incorporated the same conditional language.  That is, both the lease and the amendment and assignment allowed RARE to unilaterally terminate the agreements for the same exact reasons.  Thus, they mirror one another.  HDRE L.L.C. argues to the contrary, contending that the conditions in the lease were binding once the feasibility period expired.  Under that theory, the provisions were no longer "conditional."  However, as previously discussed, HDRE knew before the end of the feasibility period that RARE would not lease the Stirling Property, but rather wanted to purchase it.  HDRE L.L.C. acknowledges as much in its complaint.  Thus, the provisions in the "Ground Lease" were not binding, as HDRE L.L.C. contends.

Finally, setting aside the issue of novation, RARE argues that the lease was extinguished because it became impossible to perform once the assignment was executed.  The Court agrees.  First, as noted above, HDRE <u>L.L.C.</u> never had any contractual right to purchase the property.  Moreover, post-amendment and assignment, neither HDRE entity had any contractual right to purchase the property from Stirling or to lease the property to RARE.  In fact, HDRE's rights terminated upon RARE's exercise of the right to terminate the "Amendment and Assignment of Contract" for failure to obtain corporate approval.  HDRE L.L.C. counters that RARE's performance under the lease was not legally impossible, for it is "possible" that HDRE could have been able to resecure the purchase agreement with Stirling and thereafter lease to RARE.  That is pure speculation on HDRE L.L.C.'s part and is not competent summary judgment evidence.  Whether HDRE could have resecured the purchase agreement with Stirling and then enforced the lease with RARE is not an appropriate consideration for the Court.  The fact is that HDRE had no rights in or to the property; thus, performance under the lease was impossible.

Based on a thorough review of the briefs and evidence submitted by the parties, the Court finds that RARE has satisfied its burden of proving that HDRE L.L.C. had the clear and unequivocal intention to novate the lease when it assigned

the purchase agreement.  Alternatively, the lease became impossible to perform once the assignment was executed, thus excusing RARE from performance.

IV.    Fraud.

RARE's second motion for summary judgment [Record Document 68] focuses on HDRE's allegations of fraud, specifically the contention that RARE fraudulently induced HDRE into assigning the purchase agreement when RARE knew it did not intend to follow through with either the lease or the purchase of the Stirling Property.  HDRE L.L.C.'s complaint makes references to a "ruse" by RARE, a "clandestine, reprehensible" and "fraudulent plan" and "scheme."  [Record Document 1, pp. 4-8].  It also posits that RARE or its parent company, Darden Restaurants, engaged in secret negotiations with Stirling for the Olive Garden restaurant, and additionally that RARE acted in bad faith.  Id.  HDRE's opposition to the motion for summary judgment is woefully inadequate in detailing or supporting these allegations.  Rather, it merely provides more unsupported factual allegations:  (1) RARE should have been concerned that the lease feasibility period had ended, and thus it could not otherwise terminate its obligations under the lease; (2) the only way RARE could end the lease was to fraudulently induce HDRE to assign the purchase contract, thereby relieving RARE of its lease obligations; (3) evidence of the fraudulent scheme is the fact that RARE provided no reason for its

termination of the proposed purchase; and (4) that RARE purchased another parcel from Stirling a year later for a cheaper price.  [Record Document 78].  Even considering these allegations in the light most favorable to HDRE L.L.C., it still cannot satisfy its burden at the summary judgment phase because there is no competent summary judgment evidence supporting these claims.

"The burden of proving fraud rests on the party alleging it and it is indeed a serious one."  Parker v. Rhodes, 260 So. 2d 706, 710 (La.App. 2 Cir. 11/16/71). "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." Shelton v. Standard/700 Associates, 798 So. 2d 60, 64 (La. 2001) (quoting La Civ. Code art. 1953).  In pleading fraud, the circumstances constituting fraud must be alleged with particularity. See La. Code Civ. P. art. 856. However, fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. See La. Code Civ. P. art. 1957.  To establish fraud, the plaintiff must prove:  (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract.  Shelton, 798 So. 2d at 64.

In the instant case, neither in its original complaint, amended complaint, nor opposition to RARE's second motion for summary judgment does HDRE L.L.C. supplement its broad fraud allegations with any substantive support or even any cursory attempt to satisfy the aforementioned three elements.  Rather, by merely reciting the same factual allegations as before, HDRE L.L.C. asserts that it would not be "difficult for one to conclude that RARE wanted out of the Lease with HDRE and used a trick (fraud) to extricate itself from its obligations . . . ." [Record Document 78, p. 2].  However, at this stage of the proceedings, when faced with a motion for summary judgment, the non-movant's response must set forth specific facts showing there is a "genuine factual issue for trial."  Brennan v. Mercedes Benz, 388 F.3d 133, 135 (5th Cir. 2004).  Thus, HDRE L.L.C.'s duty is to inform the Court of the reasons why summary judgment is improper.  See Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1164 (5th Cir. 1983).  Further, it must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 349 (5th Cir. 2001).  It cannot satisfy that burden by setting forth conclusory allegations or unsubstantiated assertions.  To be sure, unsubstantiated assertion, improbable inferences and unsupported speculation are not competent summary judgment evidence. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).  Indeed, only

evidence -- not argument, not facts in the complaint -- will satisfy the burden.  <u>Solo</u> <u>Serve Corp. v. Westowne Assoc.</u>, 929 F.2d 160, 164 (5th Cir. 1991).

In accordance with those principles, HDRE L.L.C.'s conclusory, unsupported assertion that it is not "difficult for one to conclude that RARE wanted out of the Lease with HDRE and used a trick (fraud) to extricate itself from its obligations " simply will not suffice.  Here, HDRE L.L.C. piles inference upon inference in order to reach its ultimate speculative conclusion, without providing any support therefor. As HDRE L.L.C. bears the burden of proof at trial, its obligation entails issuing a response to RARE's motion on each and every theory of recovery and demonstrating that there are genuine factual disputes at issue, or otherwise risk losing at the summary judgment phase.  HDRE L.L.C. has failed to carry this burden by neglecting to adequately articulate any factual underpinnings or legal authority to survive summary judgment.   HDRE L.L.C.'s bare assertions that one may conclude fraud occurred from a combination of unsubstantiated allegations, absent further factual and legal support, are simply insufficient to bear its burden.   Thus, it cannot survive summary judgment on this allegation.

V.      <u>Surety Bond.</u>

In RARE's third motion for summary judgment [Record Document 69], it argues that in the event that the lease was not novated or superseded by the

"Amendment and Assignment of Contract"agreement, it was excused from performing under the lease because HDRE L.L.C. had already defaulted on the lease by not providing a surety bond.  In light of the previous determination that HDRE L.L.C.'s breach of contract claim fails as a matter of law, the Court holds that a resolution of this issue is unnecessary.

### CONCLUSION

After careful consideration of the briefs and exhibits filed and the oral argument of counsel, the Court finds that there are no genuine issues of material fact precluding summary judgment in favor of RARE.  Having found that HDRE L.L.C. failed to establish its breach of contract claim against RARE and also neglected to provide any factual or legal support for its allegations of fraud, RARE's First Motion for Summary Judgment [Record Document 67] and Second Motion for Summary Judgment [Record Document 68] be and are hereby **GRANTED**.  RARE's Motion for Judgment on the Pleadings [Record Document 27] and Third Motion for Summary Judgment [Record Document 69] be and are hereby **DENIED as moot**. HDRE L.L.C.'s Motion for Partial Summary Judgment [Record Document 72] be and is hereby **DENIED**, and the claims of HDRE L.L.C. shall be **DISMISSED WITH**

**PREJUDICE**.  A judgment consistent with the instant memorandum ruling shall

issue herewith.

      **THUS DONE AND SIGNED** on this 28th day of September, 2011.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE