UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

HDRE BUSINESS PARTNERS LTD. GROUP, LLC

CIVIL ACTION NO. 09-cv-0977

VERSUS

JUDGE FOOTE

RARE HOSPITALITY INTERNATIONAL, INC.

MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

RARE Hospitality International, Inc. ("RARE") explored opening a Longhorn Steakhouse restaurant in Bossier City. It entered into a contractual arrangement with HDRE Business Partners Ltd. Group, LLC ("HDRE") to acquire the necessary rights to the real estate on which the restaurant would be located. RARE eventually elected not to go forward with the transaction. HDRE then filed this suit and sought damages in excess of $2,000,000. After five years of litigation, including a jury trial and two appeals, RARE prevailed, and HDRE recovered nothing.

RARE filed a Motion for Attorney Fees (Doc. 249), and Judge Foote heard argument on whether RARE was entitled to recover fees under a contractual provision.[1] She issued

---

[1] RARE bases its claim to fees on a provision in the lease that gave rise to this suit. The provision states: "Right to Attorneys' Fees. In the event of any suit, action or proceeding at law or in equity, by either of the parties hereto against the other by reason of any manner or thing arising out of this Lease, the prevailing party shall have the right to recover, not only its legal cost, but its Attorneys' Fees."

rulings (Docs. 270 and 279) and held that RARE was entitled to recover fees. RARE also filed a motion for taxation of costs by the Clerk of Court. The Clerk allowed some of the costs but disallowed some items as beyond the scope of the cost statute. Judge Foote held that RARE could raise all issues with regard to the disallowed costs in connection with its request that the court assess attorney fees and related expenses. Doc. 268. For the reasons that follow, it is recommended that RARE be awarded fees and costs totaling $750,000.

**Applicable Law**

This case was filed in federal court based on diversity jurisdiction, and the Louisiana Civil Code was applied to decide the merits of the case. "In diversity cases state law governs the award of attorney's fees." Texas Commerce Bank Nat. Ass'n v. Capital Bancshares, Inc., 907 F.2d 1571, 1575 (5th Cir.1990). State law also governs the issue of whether an award is reasonable. Mathis v. Exxon Corp., 302 F.3d 448, 461-62 (5th Cir. 2002).

"The fundamental measure of attorney's fees is reasonableness, considering the factors set forth by Rules of Professional Conduct R. 1.5." Mayeur v. Campbell, 666 So.2d 366, 370 (La. App. 1st Cir. 1995). Those factors, now found in Rule 1.5(a), include: (1) the time and labor required, the novelty or difficulty of the issues, and the skill required to properly perform the legal services; (2) the likelihood, if apparent to the client, that the matter will preclude other employment; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer; and, (8) whether the fee is

fixed or contingent. State, DOTD v. Williamson, 597 So.2d 439, 442 (La.1992) (applying the factors); St. Paul's Evangelical Lutheran Church v. Quick Response Restoration, Inc., 381 Fed. Appx. 408, 413 (5th Cir. 2010). The court need not expressly consider all eight factors; the language of Rule 1.5 as well as the interpretive state court decisions "have held that the guidelines are permissive and that consideration of them all is not mandatory." Fourchon Docks, Inc. v. Milchem Inc., 849 F.2d 1561, 1568 (5th Cir. 1988).

"An award of attorney fees must be reasonable based on the degree of skill and work involved in the case, the number of court appearances, the depositions, the office work and the time spent in court." Frentress v. Howard, 728 So.2d 1019, 1022 (La. App.2d Cir.1999). If an appeal is involved, "an additional factor to be considered is the time expended on the appeal." Id. Fees are warranted for work performed on appeal because the litigant incurred those additional expenses to protect rights established at the trial level. Lovell v. Blazer Boats Inc., 104 So. 3d 549, 557 (La. App. 1st Cir. 2012).

**Discussion**

    **A. The Underlying Dispute**

RARE is a subsidiary of the well known Darden Restaurants, which owns and operates through subsidiaries more than 1,500 restaurants including Olive Garden and LongHorn Steakhouse locations. RARE became interested in opening a LongHorn Steakhouse restaurant in a shopping center being developed in Bossier City. RARE wanted to lease the property for its restaurant but Stirling, the owner of the property, wanted to sell rather than lease. RARE then approached HDRE, and the parties agreed that HDRE would

buy the property from Stirling for $1,300,000 and then lease it to RARE for a 15 year term with renewal options. HDRE and RARE separately entered into a lease agreement for the property, which required HDRE obtain title to the property.

RARE later changed its mind and told HDRE that it would rather buy the property than lease it. The parties negotiated and entered into an assignment whereby RARE agreed to take over for HDRE as the buyer of the property under the purchase agreement with Stirling. RARE later exercised a contractual right to terminate the purchase agreement after it did not obtain internal corporate approval.

HDRE alleged that RARE had actually decided it did not want to build the restaurant, and its stated change of mind on the lease/purchase issue was a ruse that was the first step in an effort to avoid its financial obligations under the lease from HDRE. HDRE took the position that RARE was still obligated to comply with its commitments under the lease. RARE responded that its obligations under the lease ceased to exist when the parties executed the assignment and RARE took over for HDRE as the buyer of the property.

After an unsuccessful mediation, RARE filed suit against HDRE in a Florida state court to seek a declaration that the execution of the assignment rendered the lease null. Nine months later, in June 2009, HDRE filed its complaint in this court for breach of the lease and to recover expenses of $106,500 and lost profits of $1,925,000, for total damages of $2,031,500. The Florida litigation was eventually stayed, but the parties agreed that discovery taken in that case was adopted for use in this litigation.

### B. The Attorney Fee Submissions

Lead counsel for RARE has been Florida attorney Brian W. Bennett of Page, Eichenblatt, Bennett, PA. Shreveport attorney James McMichael served as local counsel, and Baton Rouge attorney H. Alston Johnson, III performed appellate work. RARE, after two years of litigation, obtained summary judgment in its favor that dismissed the complaint. HDRE appealed and convinced a Fifth Circuit panel (2-1) that there were genuine disputes of material fact that could not be resolved on motion practice. Doc. 136. HDRE then demanded a jury trial which, after several more months of litigation, was held over the course of four days. The jury returned a verdict that RARE had proven that the parties clearly and unequivocally intended to substitute HDRE's obligation to purchase for RARE's obligation to lease, so that RARE's obligation to lease was no longer enforceable. Judgment was entered for RARE, and HDRE filed a second appeal. The Fifth Circuit affirmed the verdict, and the merits litigation came to an end.

RARE had filed a motion for attorney fees after it obtained summary judgment, but the motion was denied as moot after the Fifth Circuit vacated the summary judgment ruling. After the jury verdict and second judgment, RARE filed what it styled its Second Motion for Attorney Fees (Doc. 242) that was soon revised to correct errors and refiled as the Corrected Second Motion for Attorney Fees (Doc. 249).

RARE's Corrected Second Motion sought attorney fees and non-taxable expenses totaling $783,032.30 through March 31, 2013. Judge Foote heard written and oral argument regarding whether RARE was entitled to recover fees, considering the fate of the lease that

contained the fee provision, and she ruled that RARE was entitled to recover its reasonable fees. Docs. 270 and 279. There was considerable debate and perhaps misunderstanding about the procedure by which the amount of the fees would be assessed, but HDRE was eventually ordered to submit its objections to RARE's itemized bills by May 30, 2014, and the matter was referred to the undersigned for a determination of the proper amount of fees and costs. Doc. 279. HDRE timely filed a Memorandum in Opposition (Doc. 280) in which it generally objected to the amount of the fees as excessive and raised a handful of particular challenges.

In the meantime, the second appeal proceeded. The Fifth Circuit affirmed the judgment and issued its mandate in August 2014. A law clerk for the undersigned contacted counsel in October 2014 and inquired as to whether the attorney fee matter was fully briefed. Neither side indicated that it wished to file any additional briefs. RARE later filed, without warning, a January 2015 supplement, which it styled as a response to HDRE's filing made in May 2014. RARE's supplement consists of a 27-page memorandum, affidavits from the three principal attorneys, and more than 700 pages of time sheets and exhibits. This supplement updates the amount of fees and expenses through the appeal and ending December 31, 2014. HDRE has not filed any response or requested the opportunity to do so in the three months that have passed since the filing of the supplement.

RARE's most recent submission does not appear to include a total amount requested, but a review of the attorney affidavits indicates that the total amount is approximately $1,030,853.20. The bulk of the request is attributed to hours billed by the Florida firm. Mr.

Bennett testifies that he billed during the course of the litigation at either $250 or $300 per hour. His partners who worked on the case billed at rates from $185 to $225 per hour, and law clerks and paralegals billed at rates between $95 and $125 per hour. The total hours charged by the Bennett firm over the course of the litigation are 44,211 for a total fee of $864,466.

Local counsel James McMichael billed during the course of the litigation at a rate of $250 per hour. Paralegals with his office billed $70 per hour. The total hours billed by his firm are 393.8, for a total fee of $91,665. Attorney H. Alston Johnson, III spent 42.4 hours on the second appeal at a rate of $425 per hour, for a total of $18,020.

The Bennett and McMichael firms submit total expenses of $55,448.69. Attorney Bennett states that some of these expenses were submitted to the Clerk of Court for taxation but were disallowed as not properly taxable under 28 U.S.C. § 1920. RARE asked that the court require HDRE reimburse it for these fees, even though they are not taxable, because they were incurred incidental to the attorney fees incurred in the case and are of the kind ordinarily passed on to a client. Attorney Johnson's bill includes expenses of $1,253.60. There is no indication any of his expenses have been taxed as costs by any court.

### C. The Litigation History

The amount of the requested fees is significant, especially if one views the case as simply a breach of a lease agreement dispute. The record reveals, however, that this was no ordinary breach of contract litigation. The stakes were high, the allegations included fraudulent conduct by a significant player in the restaurant industry, and virtually every issue

was hotly contested. Both the undersigned and Judge Foote held a number of chambers conferences that were further evidence of the zealous prosecution and defense offered by both parties.

Attorney efforts began pre-suit when the parties held an unsuccessful mediation, and they began litigating in Florida even before this suit began. RARE immediately responded to the complaint in this action by filing a motion to dismiss or stay it in light of the Florida litigation and the Colorado River abstention doctrine. The court denied that motion, but it granted RARE's next motion, which sought to strike from the complaint certain references to settlement negotiations.

A scheduling conference was held to set deadlines for discovery, a trial date, and related matters. RARE did not await discovery before it quickly filed a motion for judgment on the pleadings and attempted to end the litigation. With the motion pending, discovery commenced, and the court entertained a number of motions to compel and other requests for resolution of discovery issues.

RARE later filed three motions for summary judgment that attacked HDRE's complaint on different grounds. HDRE filed its own motion for partial summary judgment, and all the motions were fully briefed. Judge Foote held oral argument on the motions and ordered the filing of supplemental briefs on a particular issue. She later granted summary judgment for RARE and entered judgment. HDRE appealed, which led to a significant number of attorney hours for appellate work.

The first round of fee litigation got underway as the appeal was pending. HDRE opposed the granting of fees and argued that a motion to tax costs was untimely. The Fifth Circuit eventually reversed the granting of summary judgment and remanded the case. The court denied as moot RARE's original motions for fees and costs.

HDRE filed a motion for jury trial within days of the appellate mandate. The court granted that request and scheduled the matter for a jury trial. The following months were filled with disputes regarding discovery, the impact of the Fifth Circuit's ruling on various issues, the defenses that were available to RARE at trial, and other issues. HDRE unsuccessfully sought a writ of mandamus from the Fifth Circuit regarding the effect of its earlier decision on the issues that remained for trial. The parties briefed a number of motions in limine as well as issues regarding the proper measure of damages. The case eventually made its way before a jury for the four-day trial that ended with a verdict for RARE. HDRE's second appeal followed, and RARE responded. The jury's verdict was affirmed.

**D. Assessment of Reasonable Fees and Expenses**

HDRE offers general and specific objections to the fee request in its seven-page memorandum. Doc. 280. HDRE faults RARE for not submitting evidence to establish a reasonable hourly fee for similar cases in this area, but Judge Foote's minutes (Doc. 123) of an early discussion of the attorney fee dispute reflects that counsel for HDRE "reported that he was in agreement with the attorneys fees rate charged in the bills submitted by RARE but that he disagreed with the amount of hours shown on the bills submitted." Furthermore, the court takes judicial notice that the fees requested, none of which exceeded $300 per hour, are

reasonable in this area for an attorney handling high stakes federal civil litigation. HDRE did not file an additional memorandum after attorney Johnson submitted his fees for appellate work, but his requested rate of $425 per hour is also reasonable for an appellate attorney of his skill and reputation. Johnson's time spent on the appeal was also quite reasonable considering the complexity of this case and the lengthy record with which he had to become familiar to work on the appeal.

HDRE argues that the fees requested are demonstrably unreasonable because HDRE's attorneys spent only 1,405.3 hours totaling $267,007 in fees. (In comparison, RARE's trial counsel billed about 44,604 hours of attorney and paralegal time for a total of $956,131.) HDRE does not submit any evidence in support of this assertion or point to aspects of the litigation where the parties shouldered similar burdens so that the respective hours charged for those tasks could be compared. It was also HDRE's choice as to how much effort it would put in to the case that it brought, and it should not be excused from its attorney fee obligation merely because the party it accused of fraud responded with a greater effort.

HDRE also objects to certain specific items in RARE's bills. First, it complains that RARE seeks reimbursement for "coffee and snacks" on behalf of its attorneys. RARE responds that the total for this amount on the invoice cited by HDRE was just $13.34 incurred over the course of three days during out-of-town depositions. RARE argues the expenses were reasonable but is willing to waive them if it will result in a more expeditious resolution.

HDRE faults RARE's attorneys for charging almost $12,000 for a motion to dismiss. RARE responds that the portion of the bill relating to that motion was actually closer to $8,000, and it argues that the abstention issues in the motion were complicated and important because RARE was attempting to avoid simultaneous litigation of similar issues in a state and a federal court.

HDRE complains that attorneys Bennett and Marlowe charged $594 for time preparing a litigation budget. The basis of the objection is not explained. RARE responds that the two attorneys performed separate and distinct work on preparing the budget and did not bill for doing the same work.

HDRE objects to a charge for an in-room movie at a hotel. RARE agrees that the movie charge should not be billed to the client and insists that careful review of the bill shows that the expense was not billed to the client or included in this fee request. A handwritten notation next to the item reads PEBB, the initials of the law firm representing RARE. The final amount charged indicates that the movie fee was deducted from the overall invoice in the amount sought in this fee request. HDRE also objects to "spa fees" included on a hotel bill. RARE explains that this was an $8 fee charged for its attorney to use a hotel fitness center while in Shreveport for a jury focus group. The charge was inadvertently included on the invoice and is waived from this request.

HDRE questions RARE's fees of approximately $24,000 associated with a mock jury trial exercise. HDRE does not voice any particular objection to these fees; it merely includes them among the spa fees and the like on a list of matters it characterizes as demonstrating the

excessiveness of the overall fee request. RARE responds that it was HDRE who insisted on a jury trial, which RARE opposed. RARE contends that it should not be penalized for thorough preparation for the jury trial that HDRE demanded.

Courts have awarded fees associated with mock trials or focus group exercises when the hours spent were reasonable under the circumstances. See, e.g., Harvey v. Mohammed, 951 F.Supp. 2d. 47, 64 (D. D.C. 2013) (approving 57.05 hours for mock trial or focus group); Lemus v. Timberland Apartments, LLC, 876 F.Supp. 1169, 1180 (D. Ore. 2012) (time preparing for and conducting a moot court was reasonable). In a Louisiana case, City of Shreveport v. Chanse Gas Corp., 794 So.2d 962, 979 (La. App. 2d Cir. 2001), the appellate court recognized that some courts have allowed an award for mock trial time, but it held that the trial court did not abuse its "great discretion" in not taxing the mock trial fees and costs in an expropriation case where the exercise yielded only marginal results.

The mock jury exercise was a reasonable expenditure of time in a case of this magnitude and complexity, where it is difficult to predict how a jury of laymen will assess the complex contractual relationship and legal issues such as novation, with which most persons are not familiar. The result at trial indicates that the exercise was a sound investment of time, and HDRE has not made the case that the number of hours associated with the exercise were unreasonable to accomplish the task. A reasonable amount of fees associated with the exercise should be allowed.

HDRE objected that RARE's Second Corrected Motion for Fees included approximately 500 pages of itemized billings but, HDRE claimed, the total of those bills did

not match the amounts claimed. HDRE also faulted RARE for not providing a summary or other effort to explain the basis of the fees and costs sought. RARE has since filed more billings. For example, the most recent submission (Doc. 288) includes more than 700 pages of exhibits. Perhaps somewhere among all those pages is a single page that sets forth the total amount RARE seeks, but the court has not been able to find it. Also apparently missing is a summary of the number of hours billed by each attorney. The affidavits from Mr. Bennett's firm provide the total number of hours billed by the firm, but they do not indicate how many of those hours are attributable to each of the various attorneys, paralegals, or law clerks. Such summaries would be quite helpful in allowing the court to (1) know how much RARE wants and (2) assessing that amount is reasonable. The court has done its best to add up the various requests to reach the total figure of just more than $1,000,000.

Federal courts often require that the requesting attorney demonstrate and document the exercise of billing judgment. Saizan v. Delta Concrete Products Co., 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment requires documentation of hours that are written off as unproductive, excessive, or redundant, just as counsel would do for a client who pays his fee at an hourly rate. Ideally, the fee application will show not only the hours that are claimed but also those that were written off based on the sound exercise of billing judgment. Id.; Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990). The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. Walker v. U.S. Department of Housing and Urban Development, 99 F.3d 761, 770 (5th Cir. 1996).

Louisiana decisions do not appear to incorporate the billing judgment requirement by name when applying state law, but consideration of the issue is well within the scope of an assessment of reasonableness. It also falls within the scope of the factors considered by the state courts, including the fee customarily charged for similar services. The billing judgment requirement is intended to exclude from a fee request hours that would be excluded from a client's bill, which are equally improper to charge to one's adversary. Hensley v. Eckerhart, 103 S.Ct. 1933, 1940 (1983).

**Summary and Conclusion**

The undersigned, after considering all of the relevant circumstances, finds that $750,000 is a reasonable award of fees and expenses for RARE's efforts in this case. The award reflects the degree of skill and work necessary to litigate this hard-fought case over the course of almost five years in the trial and appellate courts. It takes into consideration the extensive discovery, related disputes, and the factual and legal research necessary to present an effective case to the court and jury. The amount requested is adjusted based on the court's assessment that, despite the nature of the litigation, it did not warrant a $1,000,000 defense. The reasonableness assessment also takes into consideration that the attorney time entries were adequately detailed, but the presentation to the court did not present the hours claimed in an easily assessable format or affirmatively reflect the exercise of reasonable billing judgment. An award of $750,000 for the fees and costs associated with this litigation is believed to properly reflect a fee that would customarily be charged in this locality for

similar representation in litigation of this nature, the amount involved and results obtained, the abilities of the attorneys, and the difficulty of the issues presented by the case.

Accordingly,

**IT IS RECOMMENDED** that the court order HDRE to pay RARE $750,000 in reasonable attorney fees and expenses for this litigation pursuant to the fee provision in the lease.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of April, 2015.

_____
Mark L. Hornsby
U.S. Magistrate Judge